Good morning, may it please the court, counsel, Macy Stokes and Ty Buto on behalf of Appellant Cross-Appalee, Lyondell Chemical Company. The district court erred in failing to find that Dahlin's claim was discharged in Lyondell's bankruptcy in 2009. In so doing, the district court imposed due process requirements on the quality of the notice issued in 2009 regarding Lyondell's bankruptcy, imposed requirements that are simply not present under the Constitution. We feel this is an example really, Judge, of hindsight bias, that rather than looking at the correct standard under Mullane when assessing the bankruptcy discharge notice or the notice bar, I should say, the court looked specifically with hindsight at what the Dahlin's case was about, about benzene, about a specific site within a multi-billion dollar Lyondell bankruptcy. The court's decision that Dahlin was an unknown claimant is inarguably correct and the Appalees don't challenge that. As an unknown claimant, Dahlin was entitled only to constructive notice through publication. And the publication, which you will find in the joint appendix, you'll find a couple of different examples. The one in the Wall Street Journal, which candidly is easier to read than the one from the Clinton newspaper. The publication complied with constitutional standards. We have been unable to identify a single case anywhere in which an unknown claimant successfully challenged the due process imposed upon it through a notice bar that passed the bankruptcy rules. And this makes sense. But you do acknowledge that the Constitution would trump the bankruptcy rules if due process under the Constitution is not sufficient. Oh, absolutely. I'm not suggesting, Judge. I'm not suggesting there can never be such a case. And certainly, we don't have to suggest such a thing. But we will suggest, however, that there is no case that the district court cited, none that the plaintiffs at Appalees have cited, none that we've been able to identify where the notice was sufficient under the bankruptcy rules and yet, nevertheless, a reviewing court later determined that it violated due process. The bankruptcy rule 1005 required that we identify any companies going back eight years. And as the court indicates, that isn't some bright line automatic pass, but it's a pretty good estimate, a pretty good estimate of what due process would require. And the due process inquiry is not limited to Dean Dolan. What about the simple fact that you'd had a lot of benzene cases before all the bankruptcy stuff and like that distinguishes Placid Oil and some of the other cases? You'd had a lot of cases. You didn't even mention the name of these companies. What do you think about those simple facts that were lacking in your notice? Well, candidly, with all respect, I don't think that 217 cases over a period of 15 years leading up to the bankruptcy. But Placid had none, zero, right? Understood. Yeah, go ahead. But 217 cases for a multi-billion dollar chemical company with facilities all over, that's not a large number of cases. And candidly, as the Fifth Circuit held in Placid Oil, we have never required bar date notices to contain information. You diminish the 217. It's over 10% of all your litigation, right? No, with all respect, it's over 10% of toxic tort litigation. It's not 10%. 10% of your toxic litigation. Correct. And don't you think that's enough to put you on notice and it should be in your publication? I don't think that's the law. The law doesn't require that it would say... Because that makes Placid easy to distinguish. Merely because there were no actual Placid cases? Correct. Because there were no asbestos claims. Well, candidly, I think any time you have an oil company that operates a refinery, anything that has insulation, frankly, they are well aware of the presence of asbestos at their sites. And I don't think the mere fact that there are or not Placid Oil asbestos cases impacts what Placid would have known about the potential for future claims. It's just a standard that isn't present. Now, what we have then, what we have then is a decision on the part of the district court, which again, we think of as hindsight bias, that says for this particular plaintiff, due process was violated because there weren't enough specifics about his potential case. Well, he... Well, it doesn't have to be his specific case, it's just the whole class of cases that would have come from the operation of the Clinton facility. The whole class of cases regarding benzene in the Clinton facility is one case. Well, that's what it turned out to be. But how do we know there couldn't have been others? Well... And how could that have... That couldn't have been known. I'm just saying that it couldn't have been known that this plaintiff was going to be the only potential plaintiff. Well, there had been none in the past. I mean, again, I don't mean simply to sound quarrelsome, but there had been no Clinton benzene cases in the past. And again, I think there's a risk of looking at this in hindsight just with the limited perspective of one plaintiff, but Mullane's standard is not for every potential claim in the future. It's a reasonable notice standard, and the notice isn't viewed from Dean Dolan's point of view, but the reasonable notice under Mullane is taking account the balancing, the balancing that takes place in every bankruptcy. Does it matter that he was not yet diagnosed at the time? No. No, I'm glad the court asked that. That is one of those things that maybe is a little bit counterintuitive, but Placid talked about it. A number of cases have talked about non-manifested injuries. And the case on this... It seems kind of unfair, though. I agree with you of what Placid says, but doesn't that seem unfair? There are a lot of things about bankruptcy, like if you're a painter that provides for a company that then declares bankruptcy, that's pretty doggone unfair. It may seem unfair, but the case on this is very, very clear. He was an unknown claimant with an unmanifested injury, but the claim arose prior to the bankruptcy. And that particular issue, Judge, was one that the district court had no trouble with. So an unknown claimant, unmanifested claim, would have had the option to file some sort of objection and make some sort of claim, but did not. The claim then was barred by the bankruptcy discharge in 2009. We think that Placid Oil is good law on this, and none of the cases that the district court relies upon do what this district court did. That NRA Banks case that the court cites to, that's a case involving the question of the delivery of the notice. Does it have to be certified mail or, pardon me, service of citation or simply by mail? And by the way, that case was abrogated by the U.S. Supreme Court in 2012, I believe. So there is no authority for the hindsight bias that the district court operated under here, and we will readily concede, like so many things under the bankruptcy rules, that some of the results may intuitively seem harsh, seem unfair. But if this court . . . The best thing I can say, Judge, is this plaintiff had no trouble, at the point that it chose to bring a claim, it had no trouble within two years finding the company to sue. Like anybody else, you can go engage a lawyer if you think you have some sort of an injury, if you think you have a claim to make, you can go engage a lawyer, do five minutes of research on the internet, and determine subsequent owners of the Clinton plant. It would be extremely simple to do. Two hundred and sixty-six thousand asbestos plaintiffs made claims in the Lyondell bankruptcy. They didn't have any trouble. I mean, admittedly, that's not determinative, but that's indicative, we think, of the fact that while it may seem intuitively unfair, there is simply no case that supports what the district court found here. And the finding here, we think, is the wrong inquiry, looking only with the hindsight of Dean Dahlin rather than the standard under Mullane. Is there another case like yours where there's such an alphabet soup of companies with so many names, operating under so many places, what's the closest case that helps you on that point? I'm certain that there are bankruptcies far, far above Lyondell's. No, no, no, no. I mean, in this kind of case, you're relying on Placid Oil in these cases, Shimtura, and the other cases. Do any of those have your facts? They don't seem to. They seem to be one company, one name, one place. Right. And there are no cases, just for the sake of argument, the Enron bankruptcy, for example. If you think of the largest bankruptcy, as we can imagine, there are no cases where the due process satisfaction from the bar notice was challenged successfully by some unknown claimant in the biggest bankruptcies in the world, or in the United States history. There are no cases we've been able to find that are successful challenges, whether it's a big bankruptcy or small, based on the due process of one individual plaintiff later. And I would candidly say that's a manifestly fair question to ask, and I hope the court will ask it to the plaintiffs, because we don't think there's a case that supports the finding they got. I want to raise one issue, even though I know the court has not raised it, but we believe this is definitely an issue that is preliminary to the merits, and under the New York Marine and General Life Insurance case, even though this circuit has had some riding back and forth under Lopez and some other cases about whether you can reach issues like this under Rule 50, which were not raised under Rule 50. We believe this is preliminary to the merits, just like limitations, choice of law, standing, those other issues that this court has been willing to review on appeal. So we hope that doesn't become- So in this case, we can review the denial of a summary judgment. Absolutely. And we're not relying on some sort of law or fact dichotomy. Generally, we don't review denials of summary judgment. Correct. But because this is preliminary to the merits, just like New York Marine and all the cases it cites, this fits into that category. I have to say the question did cross my mind, so I'm glad you raised it. Absolutely. Secondly, Lyndell is entitled to judgment as a matter of law, and the court erred in failing to give it to us, based on the discharge of any duty to warn. The duty to warn in this case was discharged, and I can give you three different examples of how that occurred. We know it was discharged because Dean Dollin himself, through the testimony of his wife, knew he had to be careful around benzene because it is a chemical that can cause you to get cancer. That's straight from the trial. That's straight from her testimony. Now, you're not doing a premises liability here, right? Both. There were submissions under premises. Yeah, but the duty to warn, the way you phrased that, doesn't affect the premises liability, right? It absolutely does. Okay, now tell me, because I thought even if it's open and obvious under Iowa law, you still have to warn them if you know it'll hurt them. We have to warn them about condition and risk. The Iowa standard is the actual condition and the risk involved. They don't have a strict open and obvious rule like some states do. They have this qualified rule, I'd call it. But let me get to the second element by which we satisfy the duty to warn. Dean Dolan knew. That's pretty good evidence of what he was warned. We had to warn of the actual condition and the risk involved. You'll see our warning on page 27 of our initial brief. It warns of the actual condition, benzene, risk involved, cancer, and it tells anybody around there they need to wear PPE, personal protective equipment. It doesn't say how much, right? It doesn't.  Isn't that a problem? No, it's not a problem. It's like saying cigarette smoking will kill you, you know, and I smoked one at 17. It's not going to kill me. Go ahead. I'm not really in a position to talk about cigarette smoking, I'll concede. But with respect to benzene and the kind of criticisms that the district court offered about our warnings, those would only lessen the impact of the warnings. The complaint made by the appellees and the complaints that complained about the district court would only make our warnings less effective if we were to say, danger, benzene, but it could be really small amounts, and it could be really, really small, and you want to be real careful over long periods of time because it might still bother you. That's a less effective warning, and there's no Iowa standard that says you've got to do more than the condition, the actual condition, and the risk involved. A big, I was going to say it's all there in black and white, but it's really all there in black and white and red. Danger, benzene, cancer. We warned of the condition, the risk involved, and if that's not enough, there were material safety data sheets, material safety data sheets that were provided to his employer, Darlene Transport, and by all indications available to him, we can't testify or indicate whether he actually read them or not, but the duty to warn, just like the jury found in question number one, the duty to warn was satisfied. We believe as a matter of law, we have demonstrated with the material safety data sheets. Well, one, they said no on. I'm sorry. One, they said no on. Exactly. Right. And six, they said yes on. Exactly. And don't we have to reconcile some way there and hold number six OK? Happily, that's the next thing I wanted to talk about. Absolutely. Absolutely. There is an irreconcilable conflict between the answer. Now, wait, wait, wait. Our duty as a court under Iowa law and our Eighth Circuit law is to reconcile them. That can't be a duty that you have to reconcile. Irreconcilable response. If there's any way to do it, we're supposed to do it. Right. I'll submit that if you agree that's the law under Iowa and our Eighth Circuit law, I'll agree that you have to try to reconcile it. But if it can't be done. And let me address this as clearly as I can. There's no doubt the standard here is an abusive discretion standard about how the jury was instructed. And at the same time, there are boundless cases that say a court has no discretion to be wrong on the law. What the court apparently did was perceive that there was a negligence claim, a negligence claim. But products and premises liability are just species of types of negligence. And when you look at the jury's answers, questions one and question six, there is no principled way to reconcile those. The word exposure. No, the word exposure is in six and it's not in one. Question one. Were the defendants negligent by failing to warn Dean Dolan about the The only difference between the premises piece of one and six is the word at their premises as opposed to on their premises. Judge, there's no principled way to distinguish those, to reconcile those. The jury answered a negligence question one. No. And candidly, those of us that were in the courtroom thought, OK, well, we won. That's the case. But because the jury was then given the opportunity to give inconsistent responses, unfortunately, it did. Well, couldn't exposure in six. The implication being the degree of exposure versus any exposure that the first issue has to do with if there are hazards to benzene exposure, there's danger to the substance. But in terms of the second question, it would be to the degree how much of it you are exposed to. No. And I'm happy the court raised that. No, because because question six has to be read with final instruction, nine final instruction, nine makes clear that what we're talking about is not just exposure in the abstract, but a dangerous condition. Case law is boundless here, too. You read the jury questions along with the final. Now, you asked for a change to question six, right? Yes. You didn't ask for a change to nine, right? The final instruction? Yeah. No. OK. Now, don't you have a little bit of invited error here? If you start making the argument you're making now? No, because there is no yes for change. One, not the other. Oh, boy. Be careful. Right. Let me address that. I'm happy the court brought that up as well. There is no meaningful distinction to be made. And we're not complaining. We are not complaining that in question six, there's talk about exposure to benzene with final instruction. Nine is talking about hazardous condition. Final section nine is correct. It has to be a hazardous condition. The change we asked for was to protect us against some other hazardous condition that hadn't been tried because the only thing at the trial was exposure to benzene. So asking for a change between hazardous condition and exposure to benzene does no damage. It does say dangerous condition. Tell me if I don't get it. Oh, I'm sorry. You changed the word on us to make them look a little more like it says dangerous condition. Well, I misspoke if I said, OK, dangerous condition. Right. But certainly final instruction nine and jury question six are in any principle way the same as supremacist liability as question one, which the jury already answered no to. So it is our belief that even though we think we won after question number one, it was an abuse of discretion for the court to submit it as it did. And it was particularly frustrating because we warned of this exact problem. You'll find it in the joint appendix, page 800. Mr. Buto, you're in your rebuttal time. You can continue if you like, or you appreciate that. I'm going to wrap it. I appreciate that the courts are learning. There are other issues I want to talk about in rebuttal, like the punitive damage issue. This can't be principally reconciled. They can't. It's the same question in one and in six. The jury answered in two different ways. The remedy is a new trial. Court also heard on the sole proximate cause issue with briefs at Auburn issued. I'm pleased with the way the briefing is on that. I anticipate now two minutes left of rebuttal to address additional issues. Thank you, Mr. Buto. Mr. Gross. Thank you, Your Honor, may it please the court. My name is Michael Gross, and I represent the appellant. The appellee usually represent the appellant. The. The the the sufficiency of the notice is tested under the the central malign versus central bank, central bank and central handover bank and trust opinion. And the requirement, the constitutional requirement, which does trump anything that the bankruptcy rules specify. The constitutional requirement is that a notice be reasonably calculated under all of the circumstances to give notice of a proceeding and a reasonable opportunity to be heard. That's the test. And if if what the notice was in this case is sufficient, what this case would be, what you would do if you were a company that had hundreds of toxic tort cases pending, what you would do to to put some kind of a back end on those claims where you have particularly a disease that is slow to manifest. It doesn't show up for perhaps decades. You couldn't do this overnight, but you could do this in nine years. And in this case, it was done in 12 or 15 years. You change names of you change ownership, lateral ownership back and forth. You change corporate names through acquisitions and mergers. And and eventually you get to the point where you can file a bankruptcy petition in which you don't even mention the name of the company that that would have been known to a plaintiff who was to evict a toxic tort victim 15 years earlier. I like your fairness argument, but the other side says bankruptcy like life is often unfair. That's the real answer to that. And they say that these cases you look at, particularly Placid Oil, a circuit court case, there's just no case that that's for your side of the argument. What case is for you? And I think the key I first of all, I like what the court said during counsel's argument, which is that the Constitution does trump the bankruptcy rules. So in the final analysis, it's it's what the Constitution requires. And what the Constitution requires is an analysis that that includes the consideration of all the circumstances. There may never have been a case with these circumstances. And counsel, in fact, was unable to when asked, was unable to to identify such a case. This is what you would do if you wanted to to accomplish what what Lyondell accomplished. I wasn't there. I don't know what was on their minds. But that's not the test. The test is, was the notice that they gave sufficient to under all of the circumstances? Well, the circumstances are that this was a that they that they were that they had hundreds of toxic tort cases. They had, I think, 170 benzene cases alone in the 15 years preceding the filing of their bankruptcy petition. And the giving of their notice. So they were well aware that that people who had worked on the premises at the Clinton complex, at the loading dock during the 1980s, during the 1990s, more than eight years prior to their filing had been exposed to benzene. They weren't just aware that there had been exposure to benzene. They were aware that there had been exposure to a lot of benzene. Would it have been sufficient if they mentioned quantum what they have had to go all the way back and mentioned that the Clinton facility itself? From from my point of view, they would what they would that the test that I would apply would be what's reasonable under all the circumstances. And to me, I haven't taken it back in my mind further than I needed to take it. But you could take it back further. It would depend on the circumstances of the case. I don't know what the history of ownership of the of the plant, the you don't have to mention every little city in Iowa, you know, because even this place has got two or three. They loaded it one place. They take it to another place. And you surely don't have to mention the locations. No, I think not. I think what you have to do is is look back and and under all the circumstances that confront you when you're figuring out what your notice is going to be publish a notice or serve a notice that is sufficient to to under all of those circumstances, to to to apprise people that you can identify including unknown individuals, but people who would be potential creditors who who in this case would have would have been exposed to the risk of cancer caused by benzene. And what exactly in this case, under all these circumstances, do you think needed to be included in the publication notice? Well, you certainly would need to to identify the company that Mr. Dahlin would would recognize as the company that owned the complex and the dock or manage the dock when he was when he was working and experiencing exposure. And that's quantum. That's quantum. And quantum, despite the fact that there are 92 companies mentioned in the notice quantum, neither quantum chemical company nor quantum chemical corporation, which would be the two at issue was mentioned. You they didn't mention the Clinton complex. They didn't mention the. Cancer, they didn't mention benzene. If you are someone in the circumstances that Mr. Dahlin was in, who knows that he's been exposed, but who hasn't got any illness manifested, there isn't any reasonable way to expect that you will be aware that your time to go to a lawyer and see if you need to do something is now. You just you wouldn't know that. Counsel argued that that the that the plaintiff in this case didn't have any trouble figuring out within a couple of years how to who to sue. Well, after the disease manifested itself, he was on notice that it was time to see a lawyer. Before the disease had manifested itself, he should have been put on notice along with everybody else who was a potential claimant that now was the time to see a lawyer because there's going to be a bar date. And so that's what needed to be done. And at the very least, you needed to tell him that the company that ran the place and it has been obscured through mergers and and and changes of ownership over the preceding 15 years is is part of this bankruptcy proceeding. So the district court said it, if it had the word Benzene, it'd been OK. If all it had said was, yeah, I don't think that would be enough. I don't know. Page 26. I just looked at it. I think that if the notice had mentioned Benzene, it perhaps would have satisfied due process. I'm quoting the district court. I wouldn't argue with that because it didn't include the word Benzene. But but to me, it's it's under all the circumstances, it is so easy to include the quantum companies. And and it's so easy to recognize that if you don't notify people that those companies claims against those companies are going to be barred, that what's reasonable to to to give an opportunity to come in and be heard is to name the companies, but certainly name at least mention the Benzene, mention the Clinton complex, mention cancer. The point is that this particular notice for all of the things that it omitted didn't have a chance of notifying, didn't have any reasonable chance of notifying Mr. Dolan or anyone else who might have been exposed to and might ultimately develop cancer. It was published in the Clinton newspaper, though, right? It was published in the Clinton newspaper, all the more reason to mention quantum because the the claims go back for for many years. And and there have been a number of mergers and changes of ownership and management over those years. So so the fact that you put it in the Clinton newspaper, if I'm living in if I'm Mr. Dolan and I see that notification, my local newspaper and I don't see quantum mention, my conclusion is I don't have to worry about this one because they certainly would. Look, they've mentioned 92 companies. They certainly would mention quantum. And again, I don't think there's a bright line test here, but there but there is a principled test. It's well established. And and and I think the analysis is relatively simple. The was this notice reasonably calculated under all of the circumstances to give Mr. Dolan and people in his position the awareness that there was a proceeding going on and that if they're ever going to do something about their claim, this was the time they had to do it. And and what you would do is go see a lawyer and he can figure out whether to sue somebody and who to sue, which is what he did once he was diagnosed. Would you address the appellant's argument that essentially the plaintiff's actual knowledge of the dangers of benzene sufficed for their duty to warn to to meet their requirement to warn? I'm sorry, the the the victim's actual knowledge? Yes, that he was actually aware that benzene was dangerous. And the warning is not a basis for liability. Right. Absence of a warning. Insufficiency of a warrant. Maybe the best evidence that he that he wasn't that Mr. Dolan wasn't actually where would come from the testimony of Mr. Tubbs. He didn't know what the action limit was for benzene exposure. He didn't know how much benzene it would take to become overexposed and to cause or to cause cancer. And and he testified he would have absolutely no idea if he was ever actually overexposed. That's that's in it. Mr. Tubbs, the only person who testified and who actually worked with with Mr. Dolan. And he didn't he didn't have a clue. The there was a warning that Mr. Dolan was aware that he was working with benzene. It was and benzene can cause cancer. As the court pointed out to counsel, the the the question is I'm drifting away from that particular issue. And I'll come back to it. The question is not just was he warned about the the hazard of benzene exposure, but was he warned about the exposure at the Clinton complex and the docks, the Clinton complex in particular? That's the distinction between question one and question six. And to come back to his actual knowledge, there's Mr. Tubbs testimony about how limited his awareness was. One particular question and answer for Mr. Tubbs when when counsel for the defendant asked him that tried to pin him down that from day one, he knew that benzene could cause harm if you're overexposed to it. And what Mr. Tubbs said was we weren't basically told if we were overexposed to it, we were just basically told to be careful with the stuff. So that also addresses this this argument about the these supposedly conflicting verdicts. The the the verdict with the response and the answer to question one by the jury is, among other things, among other methods of reconciliation, is that could be interpreted as what was Mr. Dolan warned of the the risk of exposure to benzene and the hazard of benzene, the benzene can cause cancer. And the answer to question number six, the jury could have seen as was he told about the exposure he would be encountering at the at the Clinton complex on this job? And it's it's it's perfectly clear that the jury thought that that the defendant harmed Mr. caused Mr. Dolan's illness. And the jury then is confronted with two theories that they're choosing between. I thought they got three. They got three. But go ahead. But we're we're we're down to two. I'm down to two. I don't have any argument to make about the the product liability issue, the product liability theory. The and the conflict that's proposed by the appellant is between the general negligence theory and the the premises liability theory. And for a jury that's that has decided perhaps in the first minute of their deliberation that we know who caused the harm, we know what the harm was. Now, which one of these theories or which which one fits the very best? And and they and and how do we interpret question number one and question number six as questions that are asking different things? Well, question number one is talking about just about the hazard of exposure to benzene. And question number six is talking about where you warned about the exposure that you're going to encounter at this complex. Now, I assume the plaintiff went along with having final instructions nine be different than question six, right? The plaintiff went along with that. Plaintiff did not object to that. Yeah, right. The adjustment was made in response to the I don't know what it was. It was a trap. But but what about using nine to clarify what six means? Do you follow that argument? I'm not clear. OK. Nine says dangerous condition on the premises is the basis of the premises liability. It's what nine says in the jury instruction. But the question says exposure to benzene. And when you reconcile the two, doesn't exposure to benzene mean dangerous condition of the premises, which sounds like hazards from exposure? Get that one? Yes. Yeah. OK. And that fits for me. If I'm understanding correctly, question number nine is back to question number one and question number six is the question that the jury interpreted. I mean, if we're going to make the effort to reconcile the verdicts, the answer to question number one and question number six, it doesn't take too much struggling to get to the reconciliation that that one is asking, were they warned about the hazard of exposure to benzene? Generally, they were. And question number six is, were they warned about what you're actually going to encounter at this at this at these sites? And the jury said that they weren't adequately warned about that. And in that sense, there's there's it's it's clear enough. It's logical enough. And it's and it's no longer there's no longer a basis for saying that these are inconsistent verdicts. The. See, to return Judge Smith to your question about the actual knowledge of risk, there's other testimony in the record. Mr. Studeman didn't know how much benzene exposure was necessary to harm the body. He wasn't aware about the site having been a Superfund site. Mr. Shepherd was unaware of how much benzene exposure was necessary to cause harm or cancer. Looters didn't know what level of benzene exposure occurred. The expert, Ms. Jones, stated her opinion that lack of knowledge about benzene as a hazard described by employees of the complex showed the deficiency of the defendant's education program, training program. She was talking about what Mr. Tubbs testified about, that that people just didn't know what they were going to encounter at that at that site. And she also offered her opinion that Mr. Dahlin could not have appreciated the magnitude of the risk based on the fact that he didn't know how much benzene he was being exposed to at work. He knew he was being exposed, but there's no evidence that he knew how much he was being exposed. And quite the quite the opposite. Mr. Tubbs testified he didn't have a clue. Dr. Harrison testified along the same lines. So there's there's there may very well have been a question for the for the jury. But but the idea that it was proved conclusively as a matter of law that that Dean Dahlin had the knowledge he needed to to note to not require a warning under Iowa law is not not sustainable. You didn't mention the material data, safety data sheets, MSDS. The the and those gave information. They and they were they were not distributed to drivers. They were posted at employee sites. Mr. Tubbs saw that. And Mr. Tubbs didn't get enough information from that to know what the the action level was, to know what he was being exposed to. To know how much exposure there had to be for him to be at risk of getting cancer. He just didn't get told what he was walking into. He did get told by a big sign, apparently, that benzene can cause cancer. So be careful. But he wasn't being told how much he was walking into on a day by day basis. Mr. Dahlin was making six round trips a day for several years. And for the first three of those years, the the method of getting the the the the substance into his tank exposed him to fumes the whole time. They eventually came up with a better method of transfer. So that's that's what the the evidence of knowledge of risk would be. There was there's there's evidence that they were that they were told benzene causes cancer. There is a ton of evidence that they that they ample evidence. That they weren't told exactly or anything about just what how much risk they were facing at this at these premises. I want to take my last 45 seconds, because this is important also to talk about the the cross appeal. The and I'm going to have to rely on what the brief says about the cross appeal. But the the standard of review for taking away that jury's acquires not so much the scenarios of how much worse could it have been, which the district court engaged in. But but was there a persistent course of conduct showing reckless disregard for the welfare of others shown by the evidence in this case? And and and there was the it's much the same evidence that I've already talked about. Thank you, Your Honors. Thank you, counsel. Mr. Boutot. Thank you. On the punitive damage issue, the standard is defined by clear and convincing evidence, willful and wanton disregard for the rights of others. Actual or legal malice is required under Iowa law. And not only that, that malice or actual legal malice must relate to the conduct of the defendant from which the claim arose. There's simply no evidence on the record about that. Roy Wilson, the industrial hygienist, testified about the monitoring, testified about testing for benzene where there are either no detects or there were very, very small benzene detected in air. Test about about requiring PPE for the workers. There's a stipulation in this case that there is no evidence that Mr. Dahlin ever failed to wear his respirator, his PPE. That is not the complete absence of care. That is not actual legal malice on the part of the premises owner. Do you agree with the district court's questions? The district court distilled a whole bunch of questions from the Iowa cases. You know what I'm referring to? Candidly, I don't. I don't know. But the district court, you know, industry standards, you know what they are. Knowledge of similar incidents, more egregious, intentionally cover up. I think that was a I think it was an effective like review tool, if you will. Do you think those questions are fair? That's all I'm driving. Do you think the questions were good? I probably need to look at those. I think I think her analysis was very good. Let me address this whole issue about about the question on question six. There is no principled way when you read. And I just invite the court read question one, part two, and then read question six. There is no principled way to reconcile those. And question six is to be read with the agreement. I'm sorry that you agree with. Well, the only difference is at or on. And hazards, the word hazards is not in six. But it's in special instruction, nine or final instruction, nine at Joint Appendix 1930. And that's as dangerous conditions there. That's a distinction without a difference. I don't mean to be quarrelsome, but yeah. And finally, upon objecting to the duplicate submission of question six, that's all we needed to do. There's no there's no issue of waiver or some sort of invited error. The rest, of course, will be submitted on the briefs and we thank the court for its time. Thank you, Mr. Poteau. Thank you also, Mr. Gross. The court appreciates the presence of both counsel for providing argument to the court this morning and the briefing that you've received will take your case under advisement, render decision as promptly as possible. Thank you.